IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **AKISHA MCCARTER,** | CASE NO. 3:21 CV 2390 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **ZIYAR EXPRESS, INC., et al.,** | MEMORANDUM OPINION AND ORDER |
| Defendants. | |

### INTRODUCTION

Plaintiff Akisha McCarter brings negligence, vicarious liability, and survival claims individually and on behalf of her deceased husband's estate against Defendants Ziyar Express, Inc. ("Ziyar"), Hakim Niazi, P.A.M. Transport, Inc. and P.A.M. Transportation Services, Inc. ("the P.A.M. Defendants"), Universal Logistics Holdings, Inc. ("Universal"), CenTra, Inc. ("CenTra"), and Matthew Moroun in this commercial truck crash case. (Doc. 26). Currently pending before the Court are Motions to Dismiss by the P.A.M. Defendants (Doc. 39), Defendants CenTra and Moroun (Doc. 41), and Defendant Universal (Doc. 42). All are fully briefed and ripe for decision. Jurisdiction is proper under 28 U.S.C. §1332. For the reasons below, the Court grants all three Motions to Dismiss.

### BACKGROUND

This case stems from an auto accident between a commercial truck and a passenger vehicle in Toledo, Ohio, on October 15, 2021. (Doc. 26, at 5). Decedent Michael McCarter (Plaintiff's husband) was driving a passenger vehicle on Interstate 75 South merging onto Interstate 475 West; Defendant Niazi was driving a commercial truck without a trailer on Interstate 75 North merging

onto Interstate 475 West. *Id.* Niazi's truck crossed the grass median at the junction between I-75 and I-475, crashed into the decedent's vehicle at highway speed, and landed on top of the decedent's vehicle as both vehicles left the highway to the right and rolled onto the grass shoulder. *Id.* Video footage of the crash was captured by Department of Transportation highway cameras. *Id.*

Emergency personnel removed the decedent from the vehicle after about 90 minutes. *Id.* at 15. He died after being transported from the crash scene. Plaintiff alleges Niazi was watching a movie on his cell phone while he was driving at the time of the crash. *Id.* at 5.

Plaintiff brings[1] claims against several defendants in connection with the crash, including: (1) Niazi, the driver (*id.* at 5); (2) Ziyar, which Plaintiff identifies as Niazi's employer and the owner of the commercial truck (*id.* at 6-7); and (3) the P.A.M. Defendants, which Plaintiff identifies as the transportation broker and a "closely related" entity involved with the crash as the freight broker[2] for the commercial truck. *Id.* at 3.

Plaintiff also brings claims against Defendants Universal, CenTra, and Moroun. Plaintiff does not allege a connection between Universal and the crash or any parties to it in the Amended Complaint. In a later filing, Plaintiff states Universal could have had several "potential roles", such as motor carrier, shipper of the load, hirer of the P.A.M. Defendants, or freight broker. (Doc. 47, at 2-3). Plaintiff further alleges CenTra provides administrative, legal, and human resources support to Universal. (Doc. 26, at 13). Finally, Plaintiff alleges Maroun is the "controlling officer and shareholder" of the P.A.M. Defendants, Universal, and CenTra. *Id.* at 14.

### STANDARD OF REVIEW

---

1. Plaintiff was qualified and appointed administrator of the decedent's estate by the Lucas County Probate Division of the State of Ohio on November 8, 2021. (Doc. 26, at 2).
2. A freight broker is an intermediary hired to arrange for transportation of a load by hiring a motor carrier for a shipper. *See* Doc. 39, at 2.

On a motion to dismiss under Federal Civil Rule 12(b)(6), the Court tests the complaint's legal sufficiency. The Court construes the complaint in the light most favorable to Plaintiffs, accepts all factual allegations as true, and determines whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### DISCUSSION

Plaintiff brings negligence claims against all Defendants; vicarious liability claims against Ziyar, Universal, the P.A.M. Defendants, and Maroun; and survival claims against all Defendants except CenTra. (Doc. 26). The P.A.M. Defendants, Universal, and CenTra/Maroun each filed a Motion to Dismiss. (Docs. 39, 41, 42). The Court will consider each motion in turn.

<u>Defendants P.A.M. Transport, Inc. and P.A.M. Transportation Services, Inc.</u>

Plaintiff brings against the P.A.M. Defendants identical negligence claims for "failing to exercise reasonable care in arranging transportation of the Load and hiring or selecting, training, supervising and/or retaining Defendants Ziyar Express or Niazi to operate the tractor-trailer and transport the Load." (Doc. 26 at 9, 11). Plaintiff also brings near-identical vicarious liability claims against the P.A.M. Defendants for "the negligent and reckless actions and omissions of Defendants Niazi and Ziyar Express . . . committed within the course and scope of their employment or agency" with the P.A.M. Defendants. *Id.* at 8, 9. The vicarious liability claim against Defendant P.A.M. Transportation Services, Inc., differs from that against Defendant P.A.M. Transport, Inc.,

3

only in that it also seeks to hold the former liable for the "negligent and reckless actions and omissions" of the latter as well as those of Niazi and Ziyar. *Id.* at 9.

The P.A.M. Defendants argue they are shielded from Plaintiffs' claims by the preemption provision of the Federal Aviation Authorization Administration Act ("FAAAA") as shipping brokers. (Doc. 39, at 1). Plaintiff contends the claims are not preempted by the FAAAA, or in the alternative, the claims fall within the "safety exception" of the preemption provision. (Doc. 46, at 10). Consistent with its recent holding in *Lee v. Werner Enterprises, Inc.*, this Court holds Plaintiff's claims against the P.A.M. Defendants are preempted by the FAAAA. *See* 2022 WL 16695207, at *5 (N.D. Ohio).

The FAAAA provides that:

> Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. §14501(c)(1). The subsequent "safety exception" exempts from preemption "the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. §14501(c)(2)(A).

In 1992, the Supreme Court made several holdings regarding an identical preemption provision in the Airline Deregulation Act of 1978 ("ADA"):

> (1) that state enforcement actions having a connection with, or reference to, carrier rates, routes, or services are pre-empted;
>
> (2) that such pre-emption may occur even if a state law's effect on rates, routes, or services is only indirect;
>
> (3) that, in respect to pre-emption, it makes no difference whether a state law is consistent or inconsistent with federal regulation; and
>
> (4) that pre-emption occurs at least where state laws have a significant impact related to Congress' deregulatory and pre-emption-related objectives.

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384-87 (1992) (cleaned up). The Supreme Court subsequently held the same principles applied to the FAAAA preemption section.

> In *Morales*, this Court interpreted the pre-emption provision in the Airline Deregulation Act of 1978. And we follow *Morales* in interpreting similar language in the 1994 Act before us here. We have said that "when judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its judicial interpretations as well."

*Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008). There is not yet any binding law on this Court regarding whether personal injury tort claims against freight brokers are preempted under the FAAAA in keeping with *Rowe* and *Morales*. But this Court finds persuasive the Supreme Court's holding that the identical ADA preemption section applies to state common law claims, which have "the force and effect of law." *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281-82 (2014).

> This Court also adopts and incorporates its prior reasoning in *Lee*:
>
> Another Judge of this Court previously held – in a truck crash case – that negligence claims brought against a shipper and broker "fall[] squarely within the preemption of the FAAAA." *Creagan v. Wal-Mart Trans., LLC*, 354 F. Supp. 3d 808, 813 (N.D. Ohio 2018). . . . Additionally, if the safety exception preserved all claims related to motor vehicles, as urged by Plaintiffs and *Miller*, "all preempted claims would then be 'saved' by the exception." *Creagan*, 354 F. Supp. 3d at 814. This would make the entirety of the preemption provision redundant. Rather, this Court finds "it cannot ignore the straightforward preemption analysis as laid out by the Supreme Court, and finds instructive the analysis in *Rowe*." *Volkova v. C.H. Robinson Co.*, 2018 WL 741441, at *4 (N.D. Ill.). To the eye of this Court, the FAAAA's preemption provision protects precisely parties such as the shipper and broker, who did not have direct involvement in the accident that injured Plaintiffs.

2022 WL 16695207, at *5. This Court accordingly finds the claims against the P.A.M. Defendants, the freight brokers in this case, are preempted by the FAAAA and must be dismissed.

<u>Defendant Universal Logistics Holdings, Inc.</u>

Plaintiff brings against Universal (1) a vicarious liability claim for "the negligent and reckless actions and omissions of Defendants P.A.M. Transport, Inc., Niazi[,] and Ziyar Express"

5

and "for the collision as a motor carrier and statutory employer of the Load" (Doc. 26, at 11-12), and (2) a negligence claim for "failing to exercise reasonable care in arranging transportation of the Load and hiring or selecting, training, supervising and/or retaining [Defendants P.A.M., Ziyar, and Niazi] to operate the tractor-trailer and transport the Load." *Id.* at 12.

Plaintiff does not allege a definite connection between Universal and the crash. Universal points this out in its Motion to Dismiss. (Doc. 42-1, at 1). In response, Plaintiff claims Universal could have had "several potential roles . . . for this Load", including carrier, broker, or shipper, and that "discovery is needed to clarify these roles." (Doc. 47, at 2-3).

At the outset, in order to survive a Motion to Dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff seeks to hold Universal accountable for its alleged negligence and for the negligence of three other Defendants. The basic elements of a negligence claim are duty, breach, causation, and damages. *See, e.g.*, *Abrams v. Worthington*, 169 Ohio App. 3d 94, 99 (Ohio App. 2006). "In Ohio, the existence of a duty depends upon the foreseeability of injury to the plaintiff." *Id.* "The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Id.* (quoting *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St. 3d 75, 77 (1984)).

Plaintiff does not state how Universal is connected to the accident, or how or why Universal was responsible for "arranging transportation" or "hiring[,] selection, training, supervising[, or] retaining" the other parties connected to the accident. Plaintiff cannot establish a duty, a breach of that duty, or any causal connection between Universal and the damages suffered without alleging facts plausibly connecting Universal to the incident. Plaintiff fails to meet basic pleading standards in its claims against Universal.

6

Even if Plaintiff had met these pleading standards, the claims against Universal are not substantively proper. First, to the extent Plaintiff sues Universal as a "carrier, broker or shipper", all three of which Plaintiff lists as "examples of the potential roles of Defendant Universal", these claims are preempted by the FAAAA for the same reasons stated above regarding the P.A.M. Defendants.

Next, to the extent Plaintiff seeks to hold Universal vicariously liable for the actions of any parties to the accident within Universal's control, this Court notes an employer or principal can only be held liable for the conduct of its employee or agent if that employee or agent is directly liable himself. *See Hayslip v. Genuine Parts Co.*, 420 F. Supp. 3d 666, 676 (S.D. Ohio 2019). While Plaintiff does not state Universal's role with particularity, it is possible to discern from the Amended Complaint that Plaintiff sees Universal as "upstream" of the P.A.M. Defendants. *See* Doc. 51, at 2. Plaintiff alleges Niazi was employed by Ziyar, and that Ziyar was in turn hired by the P.A.M. Defendants. (Doc. 26, at 3, 12). Universal is then held out as, whatever its role, liable for the actions of the P.A.M. Defendants and the parties below them. *Id.* at 11. The claims against Universal are therefore derivative of the claims against the P.A.M. Defendants; Universal's liability depends on P.A.M.'s liability. In vicarious liability cases, "[i]f the liability of the primarily liable party was extinguished, the liability of the secondarily liable party [is] likewise extinguished." *Comer v. Risko*, 106 Ohio St. 3d 185, 190 (2005). Because the claims against the P.A.M. Defendants are preempted and those parties are not liable, Universal cannot be held liable via a derivative theory of liability.

Finally, to the extent Plaintiff asserts a negligent hiring claim against Universal, her claim also fails. To make a negligent hiring claim, a party must show "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the

7

plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." *Viglianco v. Athenian Assisted Living, Ltd.*, 2015 WL 5782979, at *6 (N.D. Ohio). While Plaintiff broadly alleges an employment relationship between Universal and the P.A.M. Defendants, she does not, for example, assert any facts suggesting knowledge by Universal of P.A.M.'s incompetence or any proximate cause between the hiring and the crash.

To find proximate cause, "it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." *Milwaukee & St. P.R. Co. v. Kellogg*, 94 U.S. 469, 475 (1876). The sparse facts set forth by Plaintiff render Universal's connection to the crash so vague and removed as to make it impossible to discern a prima facie allegation of proximate causation from the Amended Complaint.

Plaintiff asserts no other theories of liability for Universal. The claims against this Defendant must be dismissed.

Defendants Maroun and CenTra

Plaintiff brings against Maroun a vicarious liability claim for the negligence of the P.A.M. Defendants, a claim for "aiding and abetting" the P.A.M. Defendants' "violation of federal statutes and regulations", and a claim for "liability for [the] joint venture" of the P.A.M. Defendants, Universal, and CenTra. (Doc. 26, at 13-14). Plaintiff brings against CenTra a negligence claim for providing "administrative support services to Universal . . . including legal, human resource, and other services." *Id.* at 13.

The Sixth Circuit at one point predicted Ohio would consider "civil aiding and abetting" a legally viable tort theory based on a then-unapproved section of the Restatement (Second) of Torts. *Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 532-33 (6th Cir. 2000). Several

8

years later, however, the Ohio Supreme Court held that Ohio does not recognize a cause of action for civil aiding and abetting under that section, undermining the Sixth Circuit's decision. *Blake v. Wells Fargo Bank, NA*, 916 F. Supp. 2d 839, 842-43 (S.D. Ohio 2013) (citing *DeVries Dairy, LLC v. White Eagle Coop. Ass'n, Inc.*, 132 Ohio St. 3d 516, 517 (2012)). Plaintiff's claim against Maroun for aiding and abetting is therefore dismissed.

Under Ohio law, parties to a joint venture are each "liable for the negligent and tortious acts of the other members, pursuant to the venture, that result in injury to third persons." *Hulett v. Am.'s Finest Serv. Co.*, 2005 WL 2233261, at *12 (N.D. Ohio). To establish the existence of a joint venture, Plaintiff must show (1) a joint contract, (2) intent among parties to form a joint venture, (3) a "community of interest and control, including contributions to the joint venture", (4) "the mutual right" among members "to direct and control the purpose of the joint venture", and (5) an agreement among parties to the venture to share its losses and profits. *Anchor v. O'Toole*, 94 F.3d 1014, 1024 (6th Cir. 1996). At the pleading stage, Plaintiff must allege "sufficient factual matter, accepted as true, to allow this court to draw the reasonable inference" of a joint venture's existence. *Lester v. Wow Car Co.*, 2013 WL 6058676, at *3 (S.D. Ohio).

Plaintiff's Amended Complaint alleges that Defendant Moroun is "the controlling officer and shareholder" of the P.A.M. Defendants, Universal, and CenTra, and that he "entered into contractual relationships that manifested a joint intent between and with those entities to conduct business together with joint property interests, joint control over the ventures and to jointly earn financial rewards including shared profits and losses, from those business venture[s] together to transport the Load." (Doc. 26, at 15). Plaintiff does not explain Moroun's role at the P.A.M. businesses, Universal, or CenTra beyond "controlling officer and shareholder" and does not explain the purpose of the joint venture other than "to transport the Load;" Plaintiff does not

9

allege in sufficient detail how the P.A.M. Defendants or Universal were involved with the trip that ended in the crash, and she alleges only that CenTra provided support services to Universal.

These bare recitations of the elements of a claim do not provide sufficient factual matter to draw a reasonable inference or create a plausible claim. For comparison, in a case where evidence was provided of several companies' agreements to drill wells in a particular county, the court still dismissed the claim because no facts were alleged defining the scope of the agreements or identifying whether a particular drilling activity was carried out pursuant to the joint venture. *J&R Passmore, LLC v. Rice Drilling D, LLC*, 2019 WL 6051112, at *3 (S.D. Ohio). In this case, where Plaintiff has not alleged in plausible detail the existence of agreements between the Defendants, much less the scope or purpose of the agreements or each company's role, she has not pleaded sufficient facts to establish Maroun "has any stake" in the business transactions leading to the trip that ended in the crash. *Id.*

The remaining claims against Maroun appear to be either vicarious liability or negligent hiring claims. These theories of liability fail for the same reason they fail against Universal. Maroun's activities as alleged by Plaintiff are "upstream" of those by Universal, the P.A.M. Defendants, Ziyar, and Niazi. Because the parties "below" Maroun cannot be held liable, Maroun would have no liability but for the liability of the underlying parties, and Plaintiff has not alleged any proximate cause between the accident and Maroun's actions, all remaining claims against Maroun must be dismissed.

The claim against Defendant CenTra also appears to be a vicarious liability or negligent hiring claim. As is the case for the claims of this nature against Universal, Plaintiff has not sufficiently alleged liability of any "downstream" parties (extinguishing the vicarious liability claims) nor alleged facts supporting most if not all of the elements of a negligent hiring claim, such as the existence of CenTra as an employer rather than an employee or contractor, CenTra's

knowledge of incompetence, or proximate cause between CenTra's provision of legal and human resources services and the auto accident. All claims against CenTra must therefore be dismissed.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants P.A.M. Transport, Inc. and P.A.M. Transportation Services, Inc.'s Motion to Dismiss (Doc. 39), be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Defendants Matthew Maroun and CenTra, Inc.'s Motion to Dismiss (Doc. 41), be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Defendant Universal Logistics Holdings, Inc.'s Motion to Dismiss (Doc. 42), be, and the same hereby is, GRANTED.

                                         s/ *James R. Knepp II*
                                         UNITED STATES DISTRICT JUDGE